UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| First Resource Bank, as assignee<br>of the Federal Deposit Insurance<br>Corporation, as receiver of<br>Patriot Bank Minnesota, | Civil No. 12-206 (PAM/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Marvin A. Rehbein, individually,<br>and Marvin Rehbein, Trustee of the<br>Marvin Rehbein Living Trust, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. For the reasons that follow, Plaintiff's Motion is granted and Defendants' Motion is denied.

**BACKGROUND**

In July 2010, non-party Myrna Rehbein gave Defendant Marvin Rehbein, her dead husband's cousin, a $500,000 mortgage on her home in North Oaks, as security for loans Marvin had made to Myrna in 2007 and 2009. The only problem with this mortgage was that, at the time, Myrna was the personal guarantor on two loans from Patriot Bank that were in default, to the tune of $9.4 million. In addition, she owed $9 million on a different loan to a different bank.

Patriot Bank became insolvent in late 2011, and the FDIC took it over in January 2012. The FDIC then sold Patriot's assets and liabilities to Plaintiff First Resource Bank.

Patriot/First Resource brought this lawsuit contending that the mortgage from Myrna to Marvin (as well as Marvin's subsequent transfer of the mortgage to his living trust) constitute a fraudulent transfer and should be set aside.

**DISCUSSION**

The Minnesota Fraudulent Transfer Act prohibits transfers to an insider from an insolvent debtor:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Minn. Stat. § 513.45(b). First Resource bears the burden to prove each element of the statute to prevail on its contention that the transfer must be set aside.

The parties do not dispute that Myrna made a transfer to Marvin, that Marvin is an insider, or that the debt was antecedent. Plaintiff contends that there is no genuine issue of fact as to whether its claim arose before the transfer to Marvin, or that Myrna was insolvent at the time. Plaintiff admits, however, that whether Marvin had reasonable cause to believe that Myrna was insolvent is a question of fact not amenable to summary judgment.

Defendants, on the other hand, contend that there is no genuine issue of fact remaining to be decided because the evidence establishes that Plaintiff's claim arose after the transfer to Marvin, and thus that judgment is appropriate in Defendants' favor. In addition, according to Defendants, the evidence shows that Myrna was not insolvent on the date of the transfer to Marvin.

**A.     When First Resource's Claim Arose**

Myrna guaranteed three loans to a company called East Lino Lakes, LLC, of which Myrna was an officer. These loans were secured by real property in Anoka County as well as by Myrna's guaranty. One loan for $2.5 million matured in February 2010; another loan for $6.9 million matured in April 2010. The final loan, for an additional $2.5 million, matured in August 2010. None of the loans was paid at maturity, so all were in default immediately after the maturity date.

On July 6, 2010, Patriot sent Myrna by certified mail a notice of default, telling her that she was in default on all three loans (including the loan with the August 2010 maturity date, because ELL had failed to make a required June 2010 payment on that loan) and giving her until July 20, 2010, to cure the defaults. She failed to do so and Patriot brought a lawsuit in state court, which ultimately ended in a final judgment in favor of Patriot for more than $14 million. Myrna denies ever receiving the notice of default.

Also on July 6, 2010, Myrna gave Marvin the mortgage on her home that is the subject of this lawsuit. This mortgage was to secure a December 31, 2007, loan of $300,000 and a May 7, 2009, loan of $250,000. Marvin filed the mortgage on July 13, 2010, and then assigned the mortgage to himself as trustee of the Marvin Rehbein Living Trust. Myrna sold the property in August 2011 for $955,000, with $519,000 of this amount going to Marvin in his capacity as trustee. It is this $519,000 that First Resource seeks to recoup in this lawsuit.

Defendants argue that, because Patriot sent the notice of default giving Myrna until July 20 to cure the default, Patriot did not have any "claim" against Myrna on July 6 when she made the mortgage to Marvin. The MFTA defines claim as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Minn. Stat. § 513.41(3).

Under the very broad definition of claim in the MFTA, Patriot had a claim against Myrna the minute she signed the guaranty. Thus, it didn't matter whether there was a notice of default or a cure period; the claim arose the day she signed each guaranty. It might have been a contingent, unmatured claim, but for purposes of the MFTA, contingent, unmatured claims are claims nonetheless. First Resource is entitled to summary judgment on this element of its MFTA claim.

**B.      Insolvency**

First Resource argues that Myrna was insolvent on the date of the mortgage to Marvin, because her liabilities exceeded her assets by more than $14 million. Defendants take issue with First Resources calculations of some of Myrna's debts. But even taking all the numbers as Defendants state them, Myrna's liabilities exceeded her assets by more than $4 million. She was insolvent as a matter of law.

**CONCLUSION**

First Resource has established that there are no genuine issues of fact as to whether First Resource had a "claim" under the MFTA on the date of the mortgage in question, or that Myrna was insolvent on that date. Because there is a factual issue as to whether Marvin knew Myrna was insolvent at the time of the mortgage, however, the case will proceed to trial.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Plaintiff's Motion for Partial Summary Judgment (Docket No. 39) is **GRANTED**;

2. Defendants' Motion for Summary Judgment (Docket No. 41) is **DENIED**; and

3. Defendants' Motion in Limine (Docket No. 61) is **DENIED as moot**.

Dated: February 19, 2013

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge